UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. C23-1910-RSM |
| Plaintiff, | ORDER RE: MOTIONS |
| v. | |
| TAMMY BLAKEY, *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the Court on the Motion to Dismiss Complaint and Judicial Notice (Dkt. #29), Motion to Disqualify Expert Lyndon Lee and Attorneys Laura Glickman and Daniel Martin and Request for *Sue Sponte* Dismissal (Dkt. #51), Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(b) (Dkt. #57), and Motion to Stay Proceedings (Dkt. #65), all filed by Defendant Tammy Blakey, as well as the Government's Motion to Set New Deadlines (Dkt. #67).  The Court has determined that it can rule without need of oral argument and will DENY Defendant's Motions and GRANT the Government's Motion as set forth below.

## II.   BACKGROUND

The Government initiated this action on December 13, 2023, alleging violations of the Clean Water Act ("CWA") by Defendants Tammy Blakey and Flying T Ranch, Inc.  Defendant

Blakey, a Washington resident, "is a member and/or governor" and owner of Flying T. Ranch. Dkt. #1 at ¶ 8. The area ("Site") at issue consists of three properties: 18808 State Route 530 NE, Arlington, WA 98223, owned by Flying T. Ranch/Defendant Blakey, and two other parcels. *Id*. at ¶ 22. The Site is along the shoreline of the North Fork Stillaguamish River, which is a designated critical habit for several endangered species and is listed as an impaired waterbody for exceeding turbidity water quality standards for aquatic life within a quarter of a mile downstream of the Site. *Id*. at ¶¶ 23-26

Around December 14, 2018, Defendants hired Andrew Floe (now deceased) to stage "approximately 120 cubic yards (*i.e.*, 12-15 truckloads) of quarried rock, concrete rubble or debris, woody debris, and other materials at the Site landward of the ordinary high water mark" of the river. *Id*. at ¶ 28. In January 2019, Defendants again had Mr. Floe use large, motorized equipment to discharge these staged materials into the river below the ordinary high mark. Defendant "Blakey paid Mr. Floe at least $2,000 to conduct this work" to allegedly protect a power pole on the site. *Id*. at ¶¶ 30-31. Defendants did not obtain a CWA Section 404 permit from the U.S. Army Corps of Engineers for the discharge. *Id*. at ¶ 33.

The Stillaguamish Tribe, who maintains tribal treaty rights for fishing sites on the river, first reported this unauthorized discharge. *Id*. at ¶ 32. On August 6, 2019, the Snohomish County Department of Planning and Developments Services issued a Notice of Violation to Defendant Blakey for land disturbing activity without a permit and for development in a flood hazard area. *Id*. at ¶ 34. Defendant Blakey appealed this Notice, and the Snohomish County Hearing Examiner denied her appeal on December 23, 2019. Snohomish County then issued fines of $36,000 to Defendant Blakey. *Id*. at ¶ 35.

After failing to remove the unauthorized materials, the Washington Department of Natural Resources placed Flying T Ranch in Unauthorized Use and Occupancy status, which

accrues a monthly fee of $580.74 until the material is removed. In November 2023, these outstanding fees totaled $23,665.38, and the Department has requested Defendant Blakey remove the materials "at least six times." *Id*. at ¶¶ 35-37. The unauthorized materials remained at the time the Government initiated this action. *Id*. at ¶ 38.

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant Blakey moves to dismiss this case for lacking subject matter jurisdiction, failure to state a claim, and failure to join a necessary party. Dkt. #29 at 1. Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction. The Government alleges violations of the CWA, 33 U.S.C. § 1311. *See* Dkt. #1. "The CWA provides federal district courts with jurisdiction over 'any violation for which [the Administrator] is authorized to issue a compliance order" including the statute's prohibition on unpermitted discharges of pollutants from point sources in navigable waters." *United States v. Bayley*, No. 24-2901, 2025 WL 1905114, at *1 (9th Cir. July 10, 2025). The CWA further provides that "[a]ny action . . . may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance." 33 U.S.C. § 1319(b).

The Court finds that it has subject matter jurisdiction in this case and venue is proper here[1], and Defendant's arguments that the Coastal Zone Management Act and Submerged Lands Act deprive the Court of jurisdiction are incorrect and inconsistent with said statutes. *See* 16 U.S.C. § 1456(e)-(f); *Nat. Res. Def. Council v. U.S. E.P.A.*, 863 F.2d 1420, 1436 (9th Cir. 1988) (holding that "the United States retains the power to regulate water quality in navigable waters,

---

[1] Defendant's argument of improper venue was also waived by filing her responsive pleading months prior to this Motion. *See* Dkt. #6.

notwithstanding the SLA's grant of authority to" the states).

Defendant Blakey's argument that the Government already administratively closed this case in 2020 is also incorrect. Dkt. #29 at 7. An agency's decision not to enforce is generally non-reviewable. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Though the United States Army Corps of Engineers decided not to act, the Corps referred this matter to the Environmental Protection Agency and the Department of Justice. *See* Dkt. #49 at 13. The Government's "enforcement authority is not contingent upon the Army Corp of Engineers' participation[.]" *United States v. Bayley*, 2022 WL 770292, at *4 (W.D. Wash. Jan. 10, 2022. The Corps' decision has no impact on this litigation. Furthermore, Defendant's argument that the Government lacks standing for various reasons also fails. *See* Dkt. #29 at 16. "The CWA empowers the EPA to bring civil enforcement actions in U.S. district courts for unlawful discharges of dredge or fill material[.]" *Bayley*, 2022 WL 770292, at *4. To protect public interest, "[t]he EPA is tasked with policing violations after the fact . . . by bringing civil actions." *Sackett v. U.S. E.P.A.*, 598 U.S. 651, 661 (2023). Accordingly, the Government has standing in this case.

Defendant Blakey also moves to dismiss for failure to state a claim under Rule 12(b)(6) and (7) for failure to state a claim and failure to join a party under Rule 19. Dkt. #29 at 1. However, Defendant filed her Answer in this case four months prior to filing her Motion to Dismiss. *See* Dkt. #6. Accordingly, Defendant Blakey has waived these defenses. *See* Fed. R. Civ. P. 12(b). Even considering her arguments, the five-year statute of limitations under 28 U.S.C. § 2462 for the Government's claim has not expired. *See* Dkt. #1 at ¶¶ 28-29.

Defendant also argues that the Government failed "to allege it satisfied required administrative procedures and exhausted required administrative remedies prior to filing this Complaint." Dkt. #29 at 16. But, as already discussed, neither the Coastal Zone Management Act nor other regulations constrain the Government from bringing an action under the CWA.

*See Bayley*, 2022 WL 770292, at *4-5.

Finally, Defendant Blakey argues that the Government has failed to join many required interested parties under Rule 19. Dkt. #29 at 19. "[C]ourts have generally concluded that defendants cannot employ Rule 19 to force the [agency] to sue other parties or face dismissal in enforcement actions." *Bureau of Consumer Fin. Prot. v. Chou Team Realty LLC*, 2020 WL 4873529, at *3 (C.D. Cal. June 3, 2020) (quoting *SEC v. Norstra Energy Inc.*, 2016 WL 4530893, at *1 (S.D.N.Y. Jan. 19, 2016)). Defendant Blakey "may not circumvent the exercise of agency discretion through compulsory joinder rules." *Id*. (quoting *SEC v. Princeton Econ. Int'l*, 2001 WL 102333, at *1 (S.D.N.Y. Feb. 1, 2001)). Given all of the above, the Court will deny Defendant's Motion to Dismiss.

### B. Motions to Disqualify and for Sanctions

Defendant Blakey moves for this Court to disqualify Expert Witness Dr. Lyndon Lee for bias. *See* Dkt. #51. Because unreliable and unfairly prejudicial expert witness testimony is not helpful to the trier of fact, the trial court should exclude such evidence. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). However, the Government points out that it "has not yet designated Dr. Lyndon Lee as an expert, [so] it is premature to entertain any motion to disqualify him." Dkt. #53 at ¶ 1. Even if not premature, the Court agrees with the Government that Plaintiff's provided emails do not support disqualifying Dr. Lee. The Court will deny Defendant's request.

Defendant also moves to disqualify Department of Justice Attorneys Daniel Martin and Laura Glickman for bias, bringing a slew of allegations, including engaging in "federal funding fraud," "openly conspiring to mislead the Court, prejudice Defendants, Congress, the U.S. Constitution, and the honor of the Department of Justice," and improper relationships. *See gen.* Dkt. #51. Disqualification of counsel is considered "a drastic measure which courts should

hesitate to impose except when absolutely necessary." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986). Disqualification motions are therefore subject to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). The Court finds that Defendant Blakey has failed to provide any evidence supporting disqualification of these attorneys and will deny this request as well.

Defendant Blakey has also filed a Motion for Sanctions under Rule 11(b) "for the reasons mentioned in [her] Motion to Dismiss Complaint and Judicial Notice and Reply . . . and [her] Motion to Disqualify[.]" Dkt. #65. For the reasons given above, as well as for Defendant's failure to serve a draft on the Government 21 days prior to filing, the Court will deny Defendant's Motion for Sanctions and request for *sua sponte* dismissal. *See* Fed. R. Civ. P. 11(c)(2).

### C. Motion to Stay

Finally, on December 9, 2025, Defendant Blakey filed a Motion to Stay these proceedings pending the outcome of a petition for writ of certiorari in *United States v. Bayley*, No. 3:20-cv-05867-DGE (W.D. Wash). The Government opposes. *See* Dkt. #66.

In determining whether to grant a stay, the Court considers (1) the possible damage resulting from a stay; (2) hardship or inequity a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating the issues, proof, and questions of law which could be expected to result from a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). The request for injunctive relief by the Government weighs against a stay, *see id.* at 1112, and Defendant does not allege any hardship or inequity. *See* Dkt. #68 at 3 ("In this case, there will be no damage to anyone or anything by granting the stay."); *see also Lockyer* at 1112 ("being required to defend a suit, without more," in insufficient to show hardship). Finally, a granting of certiorari by the Supreme Court is, as the Government

ORDER RE: MOTIONS - 6

says, "extraordinarily unlikely," and significant differences exist between *Bayley* and this case. Dkt. #66 at 3. Accordingly, the Court will deny Defendant Blakey's Motion to Stay.

**D**. **Motion to Set New Deadlines**

The Government requests that the Court grant "a short extension of existing deadlines commensurate with the duration of the laps [in appropriations] and the limited nature of the stay." Dkt. #67 at 2. In May 2025, the Court granted the parties' stipulated motion to align the close of fact depositions and close of expert discovery to December 19, 2025, and shift other deadlines accordingly. Dkt. #25. On October 20, 2025, due to the federal government shutdown, the Court granted the Government's request to stay all deadlines pending the restoration of appropriations. Dkt. #63. The Department of Justice resumed normal operations on November 13, 2025. For the same reasons given in her Motion to Dismiss and due to the pending motions discussed above, Defendant Blakey opposes this extension. Dkt. #69. Accordingly, the Court finds good cause to grant the Government's extension to align with the parties' previous discovery agreements and account for the the federal government shutdown.

## IV. CONCLUSION

Having reviewed the instant motions, relevant briefings, and remainder of the docket, the Court hereby finds and ORDERS:

(1) Defendant Blakey's Motion to Dismiss Complaint and Judicial Notice, Dkt. #29, is DENIED.

(2) Defendant Blakey's Motion to Disqualify Expert Lyndon Lee and Attorneys Laura Glickman and Daniel Martin and Request *Sua Sponte* Dismissal, Dkt. #51, is DENIED.

(3) Defendant Blakey's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(b), Dkt. #57, is DENIED.

ORDER RE: MOTIONS - 7

(4) Defendant Blakey's Motion to Stay Proceedings, Dkt. #65, is DENIED.

(5) The Government's Motion to Set New Deadlines Following Restoration of Appropriations, Dkt. #67, is GRANTED. All deadlines in the Court's May 28, 2025, Order are reset as follows:

    a. Expert disclosure deadline: January 23, 2026.

    b. Close of expert discovery: March 27, 2026.

    c. Close of depositions of fact witnesses: March 27, 2026.

    d. Dispositive motions deadline: April 19, 2026.

    e. Motions in limine deadline: June 22, 2026.

    f. Deadline for agreed pretrial order: August 20, 2026.

    g. Trial materials deadline: August 27, 2026.

    h. Trial: August 31, 2026.

DATED this 14th day of January, 2026.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE