The Honorable Ricardo S. Martinez

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TAMMY BLAKEY et al.,<br>Defendants. | No. 2:23-cv-01910-RSM<br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT WITH NEWLY DISCOVERED EVIDENCE FOR THE SUMMARY-JUDGMENT RECORD AND FOR SUMMARY JUDGMENT ON PROSPECTIVE RELIEF**<br>**Calendar Note Date: November 13, 2026** |

## I. INTRODUCTION

Defendant Tammy Blakey respectfully moves for leave to supplement the summary-judgment record with newly discovered evidence concerning the Stillaguamish Tribe's decision to utilize an alternative access route rather than the Flying T Ranch parcels for the Cicero Floodplain Restoration Project.

On October 18, 2026, Defendant located materials published through the Washington Recreation and Conservation Office ("RCO") concerning a memorandum of understanding between Snohomish County and the Stillaguamish Tribe. The disclosure, entered on October 10,



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

2026, states that the Tribe will obtain access through a memorandum of understanding with Snohomish County. The disclosure further indicates that the Tribe will not utilize the Flying T Ranch parcels for project access. It significantly lists only three property owners affiliated with the project and Flying T Ranch is not one of them. See Blakey Declaration at 1-3.

This evidence is material because the discovery record establishes that the Tribe previously sought enforceable access through Flying T Ranch property, requested financial consequences if Flying T obstructed the crossing, and communicated with Department of Justice personnel regarding project-related access and injunctive relief. Dkt. 51 at 4, 9; Dkt. 51-1 at 1–3.

The newly discovered disclosure materially alters the factual landscape surrounding prospective relief. The Complaint seeks removal, restoration, mitigation, injunctive relief, and civil penalties based upon activities alleged to have occurred in 2018 and 2019. Dkt. 1 ¶¶ 40–49. Yet the Tribe's decision to utilize an alternative access route eliminates any present need for relief requiring, facilitating, preserving, or authorizing access through Defendant's property.

The newly discovered evidence also reinforces a broader deficiency in Plaintiff's request for prospective equitable relief. The United States must establish a present injury and show that the requested restoration, mitigation, or injunctive relief would redress that injury. Years after the alleged conduct, the record does not establish an ongoing injury attributable to Defendant's 2018 activities that would be remedied by the prospective relief sought.

The proposed mitigation further underscores the problem. Plaintiff's expert, Lyndon Lee, proposed removing material that he characterized as having been placed in a depression. But the area identified in Mr. Lee's proposal overlaps with the area the Stillaguamish Tribe sought to use to stage equipment and construct a bridge across the river. The Tribe's proposed



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

project would have involved lowering the field to approximately the river level to facilitate that bridge construction. Thus, the mitigation described in Mr. Lee's report was not limited to correcting a demonstrated present injury from Defendant's alleged Clean Water Act violation. Rather, it would have altered the property in a manner potentially more compatible with the Tribe's separate project plans.

The photographic evidence does not show that Defendant filled a depression in the manner alleged. Nor has Plaintiff identified reliable, current evidence establishing that removal of the material would restore a presently injured aquatic function or resource. The record instead supports the conclusion that the proposed mitigation was shaped, at least in part, by the Tribe's separate access and construction objectives. That evidence reinforces the need to distinguish relief necessary to remedy a proven Clean Water Act injury from relief that would facilitate an unrelated third-party project.

Because Plaintiff has not shown a present injury caused by Defendant's 2018 activities or demonstrated that the proposed measures would redress such an injury, summary judgment should be entered against the requested prospective relief.

Accordingly, supplementation of the summary-judgment record should be allowed, and partial summary judgment should be granted precluding any relief requiring access through the Flying T parcels. The Court should further grant summary judgment against prospective injunctive, restoration, and mitigation relief because the United States has not produced evidence creating a genuine dispute of material fact that Defendant's alleged 2018 activities are causing a present injury that the requested relief would redress.

## II. FACTUAL BACKGROUND

### A. The Complaint Concerns Alleged Activity Occurring in 2018 and 2019.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

The Complaint alleges that approximately 120 cubic yards of material were staged near the North Fork Stillaguamish River on or before December 14, 2018, and later placed below the ordinary high-water mark in or around January 2019. Dkt. 1 ¶¶ 28–31. The United States seeks removal, restoration, mitigation, injunctive relief, and civil penalties. Id. ¶¶ 40–49.

The Complaint was filed on December 13, 2023, five years after the alleged activity commenced. Dkt. 1.

**B. The Snohomish County Hearing Examiner Did Not Require Removal or Mitigation.**

The Snohomish County Hearing Examiner determined that after-the-fact permitting could be pursued, that the activity was non-substantial, and that removal or mitigation was not required. Dkt. 84 at 10–11, 16–18; Dkt. 84-1 at 2, 8. Jason Griffith was the main witness at the hearing, and he did not appeal the Hearing Examiner's decisions.

During those proceedings, Snohomish County's Land Use Prosecuting Attorney stated that the bank-stabilization work was a permitted use under the Shoreline Management Act. Dkt. 84 at 1–2, 17; Dkt. 84-1 at 2, 8.

These findings are relevant to the nature, scale, and environmental significance of the activity alleged in this case.

**C. The Army Corps Administratively Closed Its Enforcement Matter.**

The Army Corps of Engineers administratively closed its enforcement matter concerning the property, stating:

> "We take no enforcement or permitting action and administratively close the case. Should we receive a report of substantial impact due to the alleged unauthorized work or if additional work is performed, the enforcement action will be re-opened at that time."

Dkt. 30-1 at 29.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

The record does not show that the Corps subsequently reopened the matter based upon a finding of substantial environmental impact.

**D. The Tribe Previously Sought Access Through Flying T Property.**

The discovery record contains a July 26, 2024, communication in which the Stillaguamish Tribe requested that the Government consider temporary access through Flying T Ranch property for the Cicero Floodplain Restoration Project. Dkt. 51 at 9.

The Tribe stated that access through Flying T property would provide a more cost-effective means of mobilizing equipment and large wood, that the route would cross Defendant's property, that the access should be enforceable, and that additional financial consequences should be imposed if Flying T obstructed the crossing. Id.

**E. The Record Contains Communications Regarding Project-Compatible Relief.**

On April 14, 2024, Department of Justice counsel Daniel Martin informed Jason Griffith of the Tribe, with Laura Glickman copied, that the Government's environmental consultant had suggested that he could attempt to design injunctive relief "more compatible" with the Tribe's plans if he reviewed those plans. Dkt. 51 at 4; Dkt. 51-1 at 2.

Defendant submits this evidence solely as relevant to the scope and purpose of the remedies being considered.

**F. Unusual Deposition Line of Questions by Plaintiff.**

On March 26, 2026, Plaintiff's counsel asked Defendant about the value of the property at issue in this case, whether Defendant would consider selling it, and why Defendant would not do so. Although this line of questioning was not improper in itself, its focus on the property's value and potential sale appeared unusual in the context of the case and raised the concern that the questioning may have been coordinated with efforts intended to assist the Tribe.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

**G. The Newly Discovered Disclosure States That the Tribe Will Use an Alternative Route.**

On October 18, 2026, Defendant located information published through the Washington Recreation and Conservation Office concerning a memorandum of understanding between Snohomish County and the Stillaguamish Tribe.

The disclosure dated October 10, 2026, states that the Tribe will utilize an alternative access route and will not use the Flying T Ranch parcels for project access.

This evidence was unavailable when the pending summary-judgment briefing was filed and directly concerns the same access proposal repeatedly discussed during discovery.

## III. LEGAL STANDARD

**A. Supplementation Is Appropriate When Newly Discovered Evidence Materially Affects Pending Issues.**

Federal Rule of Civil Procedure 56 permits parties to support summary judgment with declarations, documents, electronically stored information, and other admissible materials. Fed. R. Civ. P. 56(c)(1).

When newly discovered evidence materially affects issues presented by a pending summary-judgment motion, supplementation is appropriate to ensure that the Court considers the complete factual record.

The RCO disclosure is newly discovered, was unavailable when the pending summary-judgment briefing was filed, is not cumulative of the evidence already before the Court, and directly concerns redressability, the necessity of prospective relief, and the continuing existence of any access-related controversy involving Defendant's property.

**B. Summary Judgment Is Appropriate When No Genuine Dispute of Material Fact Exists.**



TAMMY BLAKEY
18814 SR 530 NE
ARLINGTON, WA 98223
T: 425-387-1966
TB18808@AOL.COM

Summary judgment must be granted when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A genuine dispute exists only when the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. Where the nonmoving party fails to produce evidence creating a genuine dispute concerning an essential element of its claim or requested relief, summary judgment is appropriate.

**C. Article III Requires a Continuing Injury and Effective Redress.**

Article III requires an actual case or controversy throughout the litigation. A plaintiff must establish injury, causation, and redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). Those requirements must remain satisfied throughout the litigation. *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013).

The Ninth Circuit has reaffirmed that standing and redressability must persist throughout the duration of a case and that injunctive relief is available only when a present or imminent injury remains capable of being redressed. *Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC*, No. 23-55469, slip op. at 9, 14–16 (9th Cir. Nov. 5, 2025).

Here, Plaintiff has not identified any particularized, ongoing, or imminent injury. Nor has Plaintiff shown a continuing violation or a likelihood that it will suffer the alleged harm in the future. Accordingly, Plaintiff cannot establish the present injury necessary to support standing or demonstrate that injunctive relief would redress any ongoing harm. Summary judgment should therefore be granted against the request for injunctive relief.

## IV. ARGUMENT

### A. The Court Should Permit Supplementation of the Summary-Judgment Record.



TAMMY BLAKEY
18814 SR 530 NE
ARLINGTON, WA 98223
T: 425-387-1966
TB18808@AOL.COM

The RCO disclosure was unavailable when the pending summary-judgment motions were filed. It is not cumulative and directly affects issues concerning redressability, the necessity of prospective relief, and the continuing existence of any access-related controversy involving Defendant's property.

The disclosure is especially material because the discovery record shows that the Stillaguamish Tribe previously sought enforceable access through Flying T Ranch property for the Cicero Floodplain Restoration Project. The newly discovered evidence indicates that the Tribe will instead utilize an alternative access arrangement involving Snohomish County.

The change in the Tribe's access plans materially affects the factual and legal analysis of any requested relief that would require, facilitate, preserve, authorize, or otherwise provide access through the Flying T Ranch parcels.

The Court should therefore permit Defendant to supplement the summary-judgment record with the RCO disclosure and the accompanying declaration.

**B. The Tribe's Alternative Route Eliminates Any Basis for Access-Related Relief.**

The Tribe previously sought enforceable access through Flying T Ranch property for implementation of the Cicero Floodplain Restoration Project. Dkt. 51 at 9. The newly discovered disclosure states that the Tribe will utilize an alternative route and will not use the Flying T Ranch parcels.

Accordingly, any relief requiring, facilitating, preserving, authorizing, or otherwise providing access through Defendant's property would no longer provide practical relief.

The Complaint does not plead a claim to acquire crossing rights, staging rights, easements, or access rights associated with Defendant's property. Nor may the Clean Water Act be utilized to obtain access for a separate third-party project that no longer requires Defendant's



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

property. At minimum, summary judgment should be granted against all relief whose purpose or effect would be to provide access through, across, or onto the Flying T Ranch parcels.

**C. The New Disclosure Is Relevant to the Scope and Purpose of the Requested Remedies.**

The Court should consider the newly discovered evidence together with:

1. The Tribe's July 26, 2024, request for enforceable access;
2. The Tribe's request for financial consequences if access were obstructed;
3. The April 14, 2024, communication concerning project-compatible injunctive relief;
4. Discovery concerning the parcels identified for project access and staging; and
5. The deposition testimony concerning the value and possible sale of the parcels.

Defendant does not contend that these facts conclusively establish an improper purpose. Rather, they demonstrate that access through Flying T Ranch property was previously a significant issue and that the Tribe's decision to abandon that route materially changes the context in which any access-related remedy must be evaluated.

The evidence also bears on whether the requested restoration or mitigation measures are directed toward remedying a demonstrated Clean Water Act injury or would instead facilitate an unrelated third-party restoration project.

**D. The Record Does Not Establish a Present Injury Requiring Prospective Relief.**

The Complaint concerns alleged conduct occurring in 2018 and 2019. The United States seeks prospective restoration, mitigation, and injunctive relief years after the alleged placement occurred.

The Government must produce evidence creating a genuine dispute of material fact that:

1. A present injury currently exists;
2. The injury is attributable to Defendant's alleged conduct;



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

3. The injury remains ongoing; and
4. The relief sought would redress that injury.

The record does not establish those elements.

The photographic evidence does not show that Defendant filled a depression alleged. Nor has Plaintiff identified reliable, current evidence establishing that removal of the material would restore a presently injured aquatic function or resource.

The proposed mitigation is also not limited to correcting a demonstrated present injury. Plaintiff's expert, Lyndon Lee, proposed removing material that he characterized as having been placed in a depression. But the area identified in Mr. Lee's proposal overlaps with the area the Stillaguamish Tribe sought to use to stage equipment and construct a bridge across the river. The Tribe's proposed project would have involved lowering the field to approximately the river level to facilitate bridge construction.

Thus, the proposed mitigation would have altered the property in a manner potentially more compatible with the Tribe's separate project plans. The record supports the conclusion that the proposed mitigation was shaped, at least in part, by the Tribe's separate access and construction objectives.

That evidence reinforces the need to distinguish relief necessary to remedy a proven Clean Water Act injury from relief that would facilitate an unrelated third-party project.

Accordingly, summary judgment should be granted against prospective injunctive, restoration, and mitigation relief because the United States has not produced evidence creating a genuine dispute of material fact that Defendant's alleged 2018–2019 activities are causing a present injury that the requested relief would redress.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

**E. The Solomon Litigation Demonstrates the Importance of Scale, Duration, and Recovery.**

The Government's position in *Village of Solomon v. U.S. Army Corps of Engineers*, No. 3:25-cv-00073-SLG (D. Alaska), signed by Laura Glickman, recognized that environmental effects must be evaluated in relation to project size, duration, affected area, and expected recovery.

The Solomon project involved approximately 4.5 million cubic yards of material over approximately 159 acres and 2.7 miles. By contrast, this case concerns approximately 120 cubic yards of material over 350 feet allegedly placed in 2018 and 2019.

The comparison does not suggest that the projects are equivalent. Rather, it demonstrates that environmental significance cannot be evaluated in the abstract and must be analyzed in relation to scale, site-specific conditions, expected recovery, and present evidence of injury.

Solomon concluded that the affected substrate would substantially recover within two to five years and that full revegetation would likely occur within the same period. No. 3:25-cv-73-SLG, Mem. Op. at 26 (D. Alaska Feb. 26, 2026).

In this case, Plaintiff did not cite any aquatic life being killed by Defendants. Yet Ms. Glickman wrote in Solomon that the Corps acknowledged that "dredging and disposal activities would likely cause direct mortality to benthic organisms, including crustaceans and mollusks. The project would also temporarily destroy submerged aquatic vegetation, principally sago pondweed, with smaller amounts of horned pondweed identified in the project area:.."

The project at bar was completed approximately eight years ago—five years before Plaintiff filed this action. Thus, any alleged injury arising from the project is remote in time, and Plaintiff has not identified a continuing or imminent injury that would support prospective injunctive relief.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

The Government's own evidence further undermines any claim of ongoing harm. It indicates that revegetation at the project site is more than twice the level the Government considered sufficient in *Solomon.*

Because Plaintiff has not shown a particularized, present, or likely future injury, and because the available evidence demonstrates substantial revegetation rather than an ongoing violation, there is no current harm for injunctive relief to redress. The request for injunctive relief should therefore be denied.

**F. The Hearing Examiner Findings and Corps Closure Provide Additional Context Regarding Prospective Relief.**

The Snohomish County Hearing Examiner determined that the activity was non-substantial and did not require removal or mitigation. Dkt. 84; Dkt. 84-1.

The United States' position in *Northwest Environmental Advocates v. U.S. Environmental Protection Agency*, No. 2:23-cv-01637-BJR, is relevant to the weight that should be given to Washington's environmental and land-use determinations. In that case, DOJ attorney Laura Glickman stated:

> "Congress enacted the Clean Water Act 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.' 33 U.S.C. § 1251(a). At the same time, Congress expressly preserved the States' primary responsibilities and rights 'to prevent, reduce, and eliminate pollution' and 'to plan the development and use (including restoration, preservation, and enhancement) of land and water resources.' Id. § 1251(b)."

Those provisions support considering the Snohomish County Hearing Examiner's findings concerning the nature, scale, and environmental significance of the activity, as well as the determination that removal and mitigation were not required.

The United States' own recognition of the States' role supports treating the Hearing Examiner's findings as relevant evidence—not as an irrelevant or disposable local opinion. The



TAMMY BLAKEY
18814 SR 530 NE
ARLINGTON, WA 98223
T: 425-387-1966
TB18808@AOL.COM

Hearing Examiner's decision bears directly on the activity's scale, environmental significance, whether it caused a substantial injury, and whether removal or restoration remains necessary.

Although the federal court must independently decide any Clean Water Act claim, it should consider the State and local determinations rather than presume that prospective relief is necessary without evidence of a present injury.

The Army Corps later closed its enforcement matter and stated that it would take no action absent a report of substantial impact or additional work. Dkt. 30-1 at 29.

These determinations are relevant to whether removal, restoration, mitigation, or other prospective relief remains necessary years after the alleged conduct occurred.

**G. Any Civil-Penalty Claim Should Be Addressed Separately.**

Defendant recognizes that the United States may contend that any claim for civil penalties remains live even if the claims for prospective relief are unavailable. Any such claim, however, should be analyzed separately from the Government's requests for prospective injunctive, restoration, mitigation, and access-related relief.

The civil-penalty claim is subject to the applicable statute of limitations, which independently limits the penalties the Government may seek. In particular, the Court should determine when the alleged violations accrued, whether the Government filed its penalty claim within the applicable limitations period, and whether any exception or continuing-violation theory preserves otherwise untimely claims.

The passage of time cannot be used to revive penalties for alleged violations that are barred by the statute of limitations.



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

Accordingly, even if the Court concludes that a civil-penalty claim remains justiciable, it should first determine the claim's timeliness and limit any potentially recoverable penalties to violations that fall within the applicable limitations period.

That analysis should remain distinct from—and should not preserve—the Government's requests for prospective injunctive, restoration, mitigation, or access-related relief, which require a present or imminent injury capable of being redressed.

**V. REQUEST FOR RELIEF**

Defendant respectfully requests that the Court:

1. Grant leave to supplement the summary-judgment record with the Washington Recreation and Conservation Office disclosure and accompanying declaration;
2. Consider the supplemental evidence together with Dkt. 51, Dkt. 51-1, Dkt. 84, Dkt. 84-1, Dkt. 30-1, and the remaining materials already before the Court;
3. Hold that the Stillaguamish Tribe's decision to utilize an alternative access route eliminates any basis for relief requiring, facilitating, preserving, authorizing, or otherwise providing access through the Flying T Ranch parcels;
4. Grant summary judgment against all requests for access-related, project-related, staging-related, crossing-related, easement-like, or other property-use relief involving the Flying T Ranch parcels;
5. Grant summary judgment against prospective injunctive, restoration, and mitigation relief because the United States has not produced evidence creating a genuine dispute of material fact that Defendant's alleged 2018–2019 activities are causing a present injury that the requested relief would redress;



**TAMMY BLAKEY**
**18814 SR 530 NE**
**ARLINGTON, WA 98223**
**T: 425-387-1966**
**TB18808@AOL.COM**

6. Hold that the 2014 turbidity information referenced in the Complaint does not, without additional competent evidence, establish a continuing injury attributable to Defendant's alleged conduct occurring in 2018 and 2019;
7. Hold that the newly discovered disclosure is relevant to the necessity, scope, and redressability of the prospective remedies sought by the United States;
8. Analyze any remaining civil-penalty claim separately from the Government's requests for injunctive, restoration, mitigation, and access-related relief; and
9. Grant such other and further relief as the Court deems just and proper.

DATED this 19th day of October 2026.

Respectfully Submitted,

*/s/ Tammy Blakey*__
Tammy Blakey Pro-Se
18814 SR 530 NE
Arlington, WA 98223
425-387-1966
TB18808@aol.com

CERTIFICATE OF SERVICE AND WORD COUNT

I hereby certify that on October 19, 2026, I electronically filed and served the foregoing Defendant's motion for summary judgement with the Clerk of the Court for the United States District Court for the Western District of Washington using the CM/EMF system.

I hereby certify that this motion contains 3500 words excluding the caption, signature blocks, and certificates, in compliance with the Local Civil Rules.

Dated this 19th day of October 2026, at Arlington, WA. 98223

_*/s/ Tammy Blakey*_
Tammy Blakey Pro-Se
18814 SR 530 NE
Arlington, WA 98223
425-387-1966